UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW D. MRAZ, | ) | Case No. 4:19-cv-2410 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) ) | Magistrate Judge Carmen E. Henderson |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiff Matthew Mraz filed an application for disability and disability insurance benefits, which the Commissioner denied. Plaintiff appealed, and the Magistrate Judge recommended the Court affirm the Commissioner's denial. (ECF No. 17.) Plaintiff objects to the Magistrate Judge's Report and Recommendation. (ECF No. 18.) For the reasons that follow, the Court **OVERRULES** the objections, **ADOPTS** the Report and Recommendation, and **AFFIRMS** the Commissioner's denial of Plaintiff's application for disability and disability insurance benefits.

## STATEMENT OF FACTS

On June 10, 2016, Mr. Mraz applied for disability insurance benefits, alleging an onset date of March 17, 2016. (ECF No. 11, PageID #238.) He claims he is disabled due to physical and psychological issues stemming from a December 1996 injury that occurred during his employment as a delivery driver. (*Id.*, PageID #99.) The Commissioner denied his application initially and on reconsideration. (*Id.*, PageID #181 & 187.) Plaintiff subsequently requested a hearing, which was granted

and held before an administrative law judge on July 19, 2018. (*Id.*, PageID #31–75.) On October 30, 2018, the ALJ denied Plaintiff's application. (*Id.*, PageID #12–30.) Mr. Mraz filed a request for review to the appeals council; however, the appeals council declined review, rendering the denial of benefits final on August 19, 2019. (*Id.*, PageID #65–70.)

### A. ALJ's Findings

On July 19, 2018, Mr. Mraz and an impartial vocational expert testified at a hearing before the ALJ to determine whether he is disabled as the Social Security Act defines that term. ([ECF No. 11](#), PageID #95–139.) On October 30, 2018, after considering the evidence presented, the ALJ conducted the five-step analysis of 20 C.F.R. § 404.1520(a) and determined that Mr. Mraz is not disabled. (*Id.*, PageID #76–94.)

First, the ALJ found that Mr. Mraz has not engaged in substantial gainful activity since March 17, 2016, the alleged onset date. (*Id.*, PageID #81.) Second, Mr. Mraz had a number of severe impairments, as defined in 20 C.F.R. § 404.1520(c) and SSRs 85-28 and 96-3p, including "degenerative disc disease of the lumbar spine with L5 and SI radiculopathy status post four back surgeries: post laminectomy syndrome; obesity; and depressive disorder/bipolar disorder." (*Id.*) Third, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.*) The ALJ noted that she considered multiple criteria, including Listing 1.04, when she analyzed Mr. Mraz's claim. (*Id.*) Listing 1.04 is used to evaluate disorders of the

spine, "result[ing] in the compromise of a nerve root (including the cauda equina) or the spinal cord." *Bolton v. Commissioner of Soc. Sec.*, 730 F. App'x 334, 336 n.1 (6th Cir. 2018) (citing 20 C.F.R. pt. 404. subpt. P. App. 1). Specifically, the ALJ found that Listing 1.04 is not met or medically equaled because Mr. Mraz does not have nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (ECF No. 11, PageID #82.) In support, the ALJ considered, among other evidence, an MRI from May 2016, which revealed merely "*possible* impingement of the right L5 neural root." (*Id.* (emphasis added) (citing ECF No. 11, PageID #328–1269).)

Fourth, the ALJ found that Mr. Mraz is unable to perform any past relevant work under 20 C.F.R. § 404.1565. (*Id.*, PageID #87.) The ALJ found that Mr. Mraz had the residual functional capacity ("RFC") to:

> Occasionally lift and/or carry (including upward pulling) 20 pounds, frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; must periodically alternate sitting and standing, but no more than a for a few brief minutes every 1/2 hour or so, while remaining on task or, not exceeding being off-task for equal to or greater than 10% of the time; push and/or pull (including operation of hand foot controls) is unlimited other than as shown for lift and/or carry; frequently climb ramps and stairs, and balance; occasionally stoop, kneel, crouch, or crawl; never climb ladders, ropes, and scaffolds; no manipulative, visual, communicative, or environmental limitations; tasks that can be learned in 30 days or less; occasional changes in work place tasks or duties, with any such changes being gradually introduced and easily explained; and no tasks that involve high-production quotas, or fast-paced production demands, (e.g., assembly line production), but the individual is able to perform goal-oriented work (e.g., office cleaner).

(*Id.*, PageID #84.) Finally, in light of Mr. Mraz's age, education, work experience, RFC, and other factors, the ALJ determined that there are a significant number of jobs in the national economy he can perform and determined he is not disabled. (*Id.*, PageID #88–89.)

### B. Relevant Opinion Evidence

Among other evidence in the record, including the medical records and Mr. Mraz's testimony, the ALJ considered opinion evidence from multiple sources. ([ECF No. 11](#), PageID #86–87.) Relevant to Mr. Mraz's objections are the opinions of Rajendra Koirala, M.D., Plaintiff's treating psychiatrist. The record shows Dr. Koirala examined Mr. Mraz five times. With the exception of the most recent report, completed June 18, 2018, Dr. Koirala's notes and the rest of the record consistently indicate that Mr. Mraz suffers from moderate—not severe—symptoms.

### B.1. First Exam (March 5, 2018)

Dr. Koirala first examined Mr. Mraz on March 5, 2018. (*Id.*, PageID #1250.) Dr. Koirala noted that Plaintiff suffered from moderate difficulty understanding and communicating, getting along with people, and performing household life activities and severe difficulty in participating in society and getting around. (*Id.*, PageID #1254.) Further, Dr. Koirala opined that Mr. Mraz's General Disability Score indicated that he "experiences moderate difficulties in daily living due to his mental health conditions." (*Id.*) Dr. Koirala ultimately opined that Mr. Mraz suffers from "Major Depressive Disorder, Recurrent Episode, Moderate." (*Id.*, PageID #1255.) He also found that Mr. Mraz experienced five or more of the following nine symptoms: depressed mood most of the day, markedly diminished interest or pleasure in

4

activities, significant weight loss, insomnia or hypersomnia, psychomotor retardation, fatigue or loss of energy, feelings of worthlessness or excessive and inappropriate guilt, diminished ability to think or concentrate, and recurrent thoughts of death. (*Id.* at PageID #1256.) But outside of noting that at least one of Plaintiff's symptoms was either depressed mood or loss of interest or pleasure, Dr. Koirala's report neither specifies which of the nine symptoms Mr. Mraz experienced nor the severity of the symptoms.

### B.2. Second Exam (May 22, 2018)

On May 22, 2018, Dr. Koirala noted that Mr. Mraz presented with "extreme anxiety" with symptoms including: apprehension, feeling tense, racing thoughts, fear of physical illnesses, fears of disapproval, fear [that] something terrible is about to happen, tightness in the chest, butterflies in the stomach, restlessness, sweating not brought on by heat, feeling dizzy, smothering sensation, and feeling exhausted" and "moderate to severe depression" with symptoms including "feeling sad, crying spells, feeling hopeless, low self-esteem, feeling worthless, difficulty making decisions, loneliness, spending less time with friends, decreased motivation, loss of interest in activities, feeling tired, difficulty sleeping, changes in appetite, and worrying about his health." (*Id.*, PageID #1261.) Dr. Koirala's diagnosis of "Major depressive disorder, recurrent, moderate" remained unchanged. (*Id.*, PageID #1263.)

### B.3. Third Exam (April 16, 2018)

On April 16, 2018, Dr. Koirala conducted a psychiatric evaluation of Mr. Mraz. (*Id.*, PageID #1257.) Dr. Koirala noted that Mr. Mraz continued to present symptoms of depression, anxious mood, lack of energy, lack of motivation, sleep disturbance,

5

and mood lability. (*Id.*) Further, Dr. Koirala noted that the severity of Mr. Mraz's symptoms was moderate, recorded his impression that there existed a "fluctuation in symptom severity," but also noted no change in his original diagnosis of "Major depressive disorder, recurrent, moderate." (*Id.*, PageID #1258.)

### B.4. Fourth Exam (June 15, 2018)

Following an appointment on June 15, 2018, Dr. Koirala noted that Mr. Mraz presented with symptoms of anxiety. (ECF No. 11, PageID #1264–66.) Further, Dr. Koirala classified the severity of symptoms as "moderate." (*Id.*, PageID #1264). Like the previous reports, Dr. Koirala observed "[f]luctuations in symptom severity," but also noted no change in his diagnosis of "Major depressive disorder, recurrent, moderate." (*Id.*, PageID #1265.)

### B.5. Fifth Exam (June 18, 2018)

On June 18, 2018, Dr. Koirala assessed Mr. Mraz a final time. (*Id.*, PageID #1267–69.) For the first time, Dr. Koirala opined that Mr. Mraz exhibited extreme limitations and had no ability to function in the following areas: understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work-related decisions, and interacting appropriately with supervisors. (*Id.*, PageID #1267–68.) Further, Dr. Koirala opined that Plaintiff exhibited marked limitation and substantial loss in the ability to effectively function in the following areas: understanding and remembering simple instructions, carrying out simple instructions, and interacting appropriately with the public. (*Id.*) Finally, he opined that Plaintiff's depression was affecting his recent and remote memory and impairing his concentration. (*Id.*, PageID #1268.)

6

### B.6. ALJ Assigned Limited Weight

The ALJ assigned "little weight" to Dr. Koirala's opinion rather than controlling weight. (*Id.*, PageID #87.) The ALJ acknowledged that "Dr. Koirala is a psychiatrist/physician who has treated the claimant, and thus, is an acceptable and psychological source and a treating source." (*Id.*) But the ALJ found that neither the record nor his prior treatment notes, each of which reflects that Plaintiff has only moderate symptoms and limitations, supported Dr. Koirala's final opinion—the only opinion that found extreme symptoms. (*Id.*)

### C.  MRI Evidence

Also relevant to Plaintiff's objections are two MRIs of his back, one taken in May 2016 and the other in September 2016. (*Id.*, PageID #395–98, 1124.) The May 2016 MRI showed "fluid collection" and "possible impingement of the right L5 neural root." (*Id.*, PageID #395.) The September 2016 MRI merely reports that the fluid collection "previously seen . . . is smaller and almost completely resolved on this exam." (ECF No. 11, PageID #1124.) It also noted that some evidence of the scar enhancement was still visible along with "a swollen appearance though slightly less so than on the prior exam." (*Id.*, PageID #1124.) The ALJ expressly mentioned and considered the May 2016 MRI in determining Plaintiff's RFC, but she did not expressly mention the September 2016 MRI, which largely showed no difference from the earlier MRI. (*Id.*, PageID #84–85.) The ALJ did, however, cite the portion of the record that includes the September 2016 MRI. (ECF No. 11, PageID #82.)

7

### D. Report and Recommendation

Mr. Mraz timely filed this action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Magistrate Judge considered the case and entered her Report and Recommendation that the Court affirm the ALJ's decision denying Plaintiff's application. (ECF No. 17.) Plaintiff raised several issues to the Magistrate Judge, but the Court limits its discussion of the Report and Recommendation to the two issues to which Plaintiff now objects. *See* 28 U.S.C. § 636(b). First, the ALJ's assessment of Dr. Koirala's opinion. Second, the ALJ's failure to expressly mention the September 2016 MRI.

### D.1. Dr. Koirala's Opinion

The Magistrate Judge determined that the ALJ did not err by giving Dr. Koirala's opinion less than controlling weight because Dr. Koirala's opinion was not supported by his own medical notes and was inconsistent with substantial evidence in the record. (ECF No. 17, PageID #1349–53.) The Magistrate Judge agreed with the ALJ that Dr. Koirala's June 2018 opinion is not consistent with his own records because Dr. Koirala's June 18, 2018 opinion that Mr. Mraz suffered extreme limitations did not align with his earlier conclusions that Plaintiff's limitations and symptoms were moderate. (*Id.*, PageID #1351). Moreover, because the remainder of the medical records "show no more than mild to moderate symptoms of depression or anxiety," the Magistrate Judge also agreed that Dr. Koirala's opinion is inconsistent with the weight of the evidence. (*Id.*, PageID #1352.)

### D.2. MRI Evidence

The Magistrate Judge correctly determined that the ALJ expressly considered the May 2016 MRI, but did not expressly consider the September 2016 MRI. ([ECF No. 17](), PageID #1356 & 1367.) Regarding whether the ALJ erred in failing expressly to consider the September 2016 MRI, the Magistrate Judge noted that an ALJ is not required to mention everything she considered while forming the opinion. (*Id.*, PageID #1356.) Further, the Magistrate Judge noted that the September 2016 MRI "did not show any symptoms in addition to those addressed in previous MRIs . . . ." (*Id.*) She also concluded that the mere possibility of nerve root compression reflected in both MRIs does not satisfy the requirements for finding a spine disability under Listing 1.04. (*Id.*) Ultimately, the Magistrate Judge concluded that the Court need not resolve the issue of whether the evidence supports a finding of nerve root compression because even assuming that the September 2016 MRI conclusively showed such a finding, Mr. Mraz did not satisfy the other requirements of Listing 1.04. (*Id.*, PageID #1358.)

### E. Plaintiff's Objections

Plaintiff objects to the Report and Recommendation, asserting that the Magistrate Judge erred in two ways. First, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ properly accorded little weight to Dr. Koirala's medical opinion. ([ECF No. 18](), PageID #1376.) Plaintiff argues the Magistrate Judge wrongly found that Dr. Koirala's treatment notes reflected only moderate symptoms and moderate limitations. (*Id.*) He argues that the Magistrate Judge should not have found that Dr. Koirala's treatment notes did not support a finding of marked or

9

extreme limitations and were inconsistent with the remaining psychiatric evidence. (*Id.*) In other words, Plaintiff believes the ALJ did not sufficiently explain why she accorded Dr. Koirala's opinion less than controlling weight. Second, Plaintiff objects to the Magistrate Judge's finding that the ALJ did not err in failing to consider the September 2016 MRI. ([ECF No. 18](), PageID #1375–77.)

## ANALYSIS

When reviewing a report and recommendation, the Court conducts a de novo review of the portions to which there are objections. 28 U.S.C. § 636(b); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "Objections must be specific, not general" and should direct the Court's attention to a particular dispute. *Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Thomas v. Arn*, 474 U.S. 140, 147 (1985) ("The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.").

De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation. 28 U.S.C. § 636(b). Where a party properly objects, review of an ALJ's decision is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Commissioner of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see* 42 U.S.C. § 405(g). Substantial evidence is greater than a mere scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence would lead a reasonable mind to accept the evidence

of record as adequate to support a conclusion. *Id.* at 241. Where substantial evidence supports the Commissioner's decision, it must be affirmed—even if the Court might have resolved the question differently. *Id.*

Generally, if the ALJ erred by applying an improper legal standard, the Court will not uphold that decision unless the error is harmless. *See Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). An error that does not "affect the substantial rights of the parties" is harmless. 28 U.S.C. § 2111. Further, "[w]hile it may be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Commissioner of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Def. Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)). Administrative law judges need not "discuss each piece of data in [their] opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Commissioner of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky*, 167 F. App'x at 507–08).

### I. Dr. Koirala's Medical Opinion

Plaintiff argues that the ALJ erroneously accorded little weight to the opinion of Dr. Koirala, who all parties agree is Plaintiff's treating psychiatrist. (ECF No. 18, PageID #1375–76.) Because Dr. Koirala is a treating physician, the Court must determine whether the ALJ followed the treating-source rule. An ALJ is usually required to give more deference to the opinions of treating physicians, as opposed to non-treating physicians, because treating "sources are likely to be the medical

11

professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). The treating-source rule requires that an ALJ give the opinion of a treating source controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* Put another way, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (Soc. Sec. Admin. July 2, 1996).

If an ALJ does not assign controlling weight to a treating source, the ALJ must give "good reasons" for the weight assigned. 20 C.F.R. § 404.1527(c)(2). There are six factors an ALJ must consider if the opinion of a treating source is not accorded controlling weight: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) supportability of the opinion, (5) consistency of the opinion with the record as a whole, and (6) specialization of the treating source. *Wilson*, 378 F.3d. at 544 (citing 20 C.F.R. § 404.1527(d)(2)). While an ALJ is required to consider these factors, the good-reasons requirement does not demand "an exhaustive factor-by-factor analysis."

12

*Kepke v. Commissioner of Social Sec.*, 636 F. App'x 625 (6th Cir. 2016) (citing *Francis v. Commissioner of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011)). An ALJ's good reasons may be adequate, even if brief, where the reasons demonstrate consideration of some the factors. *See Nejat v. Commissioner of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) (finding ALJ's brief observations sufficient where they indicated consideration of three factors). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996).

The ALJ assigned limited weight to Dr. Koirala's opinion and gave good reasons for doing so. Specifically, she observed that Dr. Koirala's most recent opinion is inconsistent with his prior treatment notes and with the record, both of which reflect that Plaintiff has only moderate symptoms and limitations. (ECF No. 11, PageID #87). The record supports the ALJ's findings of inconsistency, and the Court determines that the ALJ's opinion permits understanding of the disposition of Plaintiff's case and meaningful review of it. *See Hargett v. Commissioner of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (discussing the purpose of the good-reasons rule). Because the record supports the ALJ's findings that Dr. Koirala's most recent medical opinion is inconsistent with his own treatment notes and with the remainder of the record, the ALJ did not err in assessing Dr. Koirala's medical opinion.

### I.A. Inconsistency in Prior Treatment Notes

Dr. Koirala's treatment notes from Mr. Mraz's first four appointments—on March 5, April 16, May 22, and June 15, 2018—noted that Mr. Mraz exhibited moderate symptoms and limitations. (ECF No. 11, PageID #1250–63.) Although the treatment notes from the April, May, and June 15, 2018 appointments indicate that Mr. Mraz experienced "[f]luctuations in symptom severity," these notes also indicate that Dr. Koirala had no change in his diagnosis of "Major Depressive Disorder, Recurrent Episode, Moderate." (*Id.*, PageID #1258, 1260 & 1265.) Dr. Koirala's final treatment notes following the June 18, 2018 assessment are the first time he opined that Mr. Mraz exhibited marked and extreme limitations and symptoms. (*Id.*, PageID #1267–69.) Accordingly, the ALJ did not err in finding that Dr. Koirala's notes referencing findings of marked and severe limitations and symptoms following the June 18, 2018 appointment to be inconsistent with his previous assessments.

### I.B. Inconsistency with the Record

As for the inconsistency between Dr. Koirala's treatment notes and the record as a whole, in contrast to the findings of Dr. Koirala's June 18, 2018 evaluation, the medical opinions of other physicians in the record support a finding that Mr. Mraz is only moderately impaired. Although "the existence of a contrary conclusion by a different physician does not give the ALJ license to discount a treating-source opinion and make his own determination without explanation," the record here reveals multiple opinions contrary to Dr. Koirala's that justify the ALJ giving his opinion limited weight. *Hargett*, 964 F.3d at 552.

14

For instance, Plaintiff was evaluated by nurse practitioner Mary Hall in August 2016. (ECF No. 11, PageID #1109.) Following the appointment, Hall observed that Mr. Mraz "appear[ed] calm, attentive, but tense" and further noted that language skills were intact, signs of mild depression were present, associations were intact, thinking was logical, and thought content appeared appropriate. (*Id.*) And in October 2016, Dr. Muhannad Kassawat, a psychiatrist and addictionologist, diagnosed Mr. Mraz with "Major Depressive Disorder, Recurrent Episode, Moderate." (*Id.*, PageID #1108.) Further, progress notes from nine subsequent appointments conducted by Dr. Kassawat and Ms. Hall ranging from November 2016 through December 2017 provide a diagnosis of "Major Depressive Disorder, Recurrent Episode, Moderate." (*Id.*, PageID #1141–61.) Also in October 2016, Dr. Kenneth Gruenfeld, Mr. Mraz's examining psychologist, noted nearly entirely normal findings regarding Plaintiff's depression and anxiety. (*Id.*, PageID #1093–94.) The ALJ discussed Dr. Gruenfeld's opinion in explaining the RFC finding. (*Id.*, PageID #87.)

Although the ALJ did not list all the particular evidence in the record that she considered to be inconsistent with Dr. Koirala's opinion, the record supports her opinions, and her explanation indicates she considered Dr. Koirala's relationship with Mr. Mraz, supportability of the opinion, and consistency of the opinion with the record as a whole. *See Nejat*, 359 F. App'x at 578 (finding ALJ's brief observations sufficient where they indicated consideration of three *Wilson* factors). Accordingly, the ALJ complied with the treating-source rule and provided good reasons for discounting Dr. Koirala's opinion.

15

Nevertheless, Plaintiff appears to argue that, because the other record evidence predates Dr. Koirala's June 18, 2018 evaluation, the Magistrate Judge incorrectly determined that the ALJ did not err in finding the remainder of the record to be inconsistent with Dr. Koirala's treatment notes. But Plaintiff does not cite, and the Court does not find, any authority supporting the proposition that a claimant's most recent medical evaluations must be given more weight than earlier evaluations, regardless of overall consistency. To the contrary, when evaluating the weight to accord a treating source's opinion, the ALJ must consider the consistency of that source's opinion with the record as a whole. *Wilson*, 378 F.3d. at 544 (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ noted that Dr. Koirala's finding of marked and severe limitations was inconsistent with other evidence in the record finding that Plaintiff experienced only moderate symptoms and limitations. Accordingly, the ALJ did not err in limiting the weight granted to Dr. Koirala's treatment notes based on the inconsistency of his June 18, 2018 opinion compared to his prior treatment notes and the remainder of the record.

## II. The September 2016 MRI

For his second objection, Plaintiff argues the ALJ erred by failing to consider the September 2016 MRI. (ECF No. 18, PageID #1376–77.) He argues the September 2016 MRI demonstrated scar enhancement that extended through the surgical site and surrounded the descending SI nerve root and should have been considered "evidence of nerve root compression" required to establish Listing 1.04. (*Id.*) Further, he contends that "the ALJ's failure to consider the objective MRI evidence was not just an issue for satisfying the criteria of Listing 1.04, but also should have been

16

considered when formulating the ALJ's hypothetical questions and ultimate RFC." (*Id.*, PageID #1377).

### II.A. September 2016 MRI and Listing 1.04

The Magistrate Judge ruled that, although "the ALJ did not mention the September 2016 MRI in her decision, the MRI did not show any symptoms in addition to those addressed in previous MRIs, and the medical record as a whole provides substantial evidence that Mraz does not meet the requirements of Listing 1.04," which is used to evaluate disorders of the spine. (ECF No. 17, PageID #1356.) The Court agrees and determines that the ALJ's failure to expressly mention the September 2016 MRI was harmless error.

To satisfy the listing, there must be "A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or "B. Spinal arachnoiditis"; or "C. Lumbar spinal stenosis resulting in pseudoclaudication." 20 C.F.R. pt. 404. subpt. P. App. 1.

Plaintiff objects that the ALJ erred by failing to consider the September 2016 MRI because the MRI shows that he met the nerve root compression requirement of Listing 1.04. (ECF No. 13, PageID #1288 & ECF No. 18, PageID #1376–77.) This objection lacks merit for two reasons. First, the ALJ evaluated Plaintiff's impairments under all three sections of Listing 1.04 and held that he does not have nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in

17

pseudoclaudication, and cited a range of documents that includes both the May 2016 and September 2016 MRIs to support her finding. (ECF No. 11, PageID #82.) This indicates the ALJ at least considered the September 2016 MRI in evaluating the requirements of Listing 1.04, although she did not expressly mention it.

Second, as the Magistrate Judge explained, even assuming the September 2016 MRI is evidence of nerve root compression, as Plaintiff argues, he otherwise failed to prove the remaining requirements of Listing 1.04. (ECF No. 17, PageID #1357.) For instance, Listing 1.04 requires motor loss accompanied by sensory or reflex loss and positive straight-leg raising tests, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing § 1.04(A), but the record evidence shows intact motor strength and normal leg strength. (ECF No. 17, PageID #1358 (citing ECF No. 11, PageID # 1080, 1155, 1167, 1170, 1176 & 1179).) Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff failed to prove he meets the requirements of Listing 1.04 and that the September 2016 MRI cannot have changed that deficiency in evidence. (*Id.*, PageID #1355–59.) Any error was harmless.

### II.B. The September 2016 MRI and the RFC

Plaintiff argues that the ALJ would have issued a different RFC had she considered the September 2016 MRI. This argument fails in two ways. First, although an ALJ must consider all relevant evidence in the case record, 20 C.F.R. § 416.945(a)(1), "an ALJ is not required to discuss every piece of medical opinion evidence." *Karger v. Commissioner of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011). As noted, there is some indication the ALJ considered the second MRI when making her RFC determination because both MRIs were included among a list

18

of exhibits the ALJ cited to support her findings regarding the severity of Mr. Mraz's symptoms in light of the requirements of Listing 1.04. (ECF No. 11, PageID #82.)

Second, the September 2016 MRI did not contain any new information that was not apparent on the earlier May 2016 MRI, which the ALJ did expressly consider. (ECF No. 11, PageID #85). To the extent Plaintiff argues the September 2016 MRI would have affected the residual functional capacity or the determination that Plaintiff did not meet all the requirements of Listing 1.04, the Court disagrees. The September 2016 MRI did not provide additional material information different from the May 2016 MRI. As the Commissioner notes, the September 2016 MRI at worst shows the same conditions as the May 2016 MRI and at best indicates improvement. (ECF No. 19, PageID #1380.) Because the ALJ expressly considered the May 2016 MRI and the September 2016 MRI did not show any worsening compression or other symptoms, the ALJ's failure to address the September 2016 MRI was harmless error.

## CONCLUSION

The Court **OVERRULES** Plaintiff's Objections (ECF No. 18), **ADOPTS** the Magistrate Judge's report and recommendation (ECF No. 17), and **AFFIRMS** the Commissioner's decision denying the Plaintiff's request for benefits. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: July 26, 2021

                                                J. Philip Calabrese
                                                United States District Judge
                                                Northern District of Ohio